number three please. Please proceed. Good morning, Your Honor, just an anticipated report from the Counsel, leading off first with the defendant's argument, whether this court has jurisdiction in the state, acknowledges that they did not file a certificate of substantial involvement in the trial court, of course that is not fatal to the court's jurisdiction, of course the only thing that confers jurisdiction on a court is the notice of appeal, which was filed in this case. As an aside, the people would submit that, I think the record clearly shows that the in this case, which suppressed everything that resulted from the traffic stop, including the cocaine that was found in the car upon subsequent search. The defendant, of course, was charged in this case with the unlawful possession of a controlled substance of the intent to deliver, being cocaine. Did you get a copy of the state certificate of the intent to appeal? Yes. On January 18th, filed January 18th? I'm sure it's in the record. Well, there was a Grinney County file that certified that the order of the trial court suppressing the evidence in this case has substantially impaired the ability of the people to prosecute the case. Were you aware of that? Evidently, I was not. We'll give it a little bit, until about five minutes. That's interesting. She didn't get a copy of that either. I suppose she didn't get that copy. That was filed in January. That's interesting. Where did the court obtain this? They filed it with the court. With the appellate court? Yes. No, no. They filed it at the circuit court. On January 18th, they filed it with the circuit court. It's not titled Certificate of Impairment, which might have confused people. It's called a Certification of Intent to Appeal. Okay. Ann, can you get a copy for both attorneys? You don't have it either. Thank you, Justice Carter. Moving on to the facts of this case. The facts of this case are relatively straightforward. At around midnight on July 17th, 2017, Bremby County Sheriff's Deputy Aaron Correa observed the defendant's vehicle and appeared to the deputy that did not have a rear registration tag. It turns out what was in place of where the rear registration tag typically is was an advertisement for the dealership where the car was from. But the court didn't see it, so he initiated a tracking stop, and very shortly after initiating that tracking stop, the vehicle was stopped. He noticed that the registration tag was affixed up on the window of the vehicle the defendant was driving. He also testified at the motion to suppress hearing that he stopped the vehicle not only because of the registration tag issue, but because there was no registration light, there was a cracked taillight with tape over it, and there were also air fresheners. Excuse me, there were air fresheners? That's what the deputy said. Yeah, there were air fresheners, multiple air fresheners present, I'm assuming. We don't know. That was given up, wasn't it? Yes. I'm just trying to say that. That was abandoned. The air freshener issue and whether there was a cracked taillight issue, that was abandoned by the city court. And, of course, so within one minute of stopping the vehicle, Deputy Corey realized that the registration was proper and affixed to the rear window, but he continued with the traffic stop anyway, went on to ask for the defendant's driver's license, realized that it was suspended in the state of Iowa, arrested the defendant, eventually the car was searched, and, of course, the machine was found as I already mentioned. The defendant filed his motion to suppress. The trial court held that the initial stop of the vehicle was permissible because Deputy Corey could not see the registration. However, the court granted the defendant's motion because the lack of the registration light did not give him reasonable grounds to continue investigating as because the registration was not on the bumper where it typically is, there was nothing to eliminate with the light. And, of course, the state appealed. In my brief, I argued that the registration light issue gave Deputy Corey reasonable grounds to continue his investigation. But having read the defendant's brief in this case, I am not going to report on that particular issue. But I would like to comment on a couple of things that the defendant did mention in the brief. Number one, that the state forfeited. Well, okay. So the trial judge below found that the vehicle was legally stopped. The defendant argues that the state forfeited that issue on appeal for failing to argue it in our brief. Whether or not Deputy Corey had probable cause to stop the defendant's vehicle for improperly displaying registration, the state admits that we couldn't have forfeited that issue because that was an issue that the trial judge found in our favor alone. The state argued that the deputy had probable cause to continue his detention and investigation based on that issue. But that issue was not forfeited because the trial judge found in our favor. The trial judge found that the stop was proper, but the continued investigation was not. So the state doesn't see how it could have forfeited the issue of whether or not Corey had probable cause for the initial stop of his vehicle. The defendant also argues that that finding by the trial judge was against the manifesto of the evidence because the defendant argues that the video in this case and some of the testimony by Deputy Corey establishes that he could have seen or that he did misspoke. The defendant argues that Deputy Corey did see the registration on the video. And the people submit that Corey's testimony was clear below. He said he did not see the registration. He looked where it was supposed to be. It was dark. He couldn't see it. There was no light, but there was no registration there anyway. But his testimony was clear that he did not see the registration. And he said he did not see it until the vehicle's angel complete stop after he told the defendant over. The trial judge believed Deputy Corey's testimony. And the state submits that the record supports the trial judge's finding. Corey said he didn't see it. The judge believed that testimony and found Corey credible in that instance and agreed with the state on that. The state submits that the defendant can't conclude as to what Corey saw based on other observations. Deputy said he didn't see it. The judge believed it. And the people submitted that finding. Well, once he saw it was an eye over registration, did that end the ability to do anything else because the reason for the stop had dissipated? Not according to People v. Cummings, which is a case cited by the defendant. Cummings 2? Cummings 2, which the defendant acknowledges in brief, quote, should this court find that Deputy Corey's stop for the supposed unseen registration was proper, that under the Fourth Amendment and the holdings of Cummings 2 and Rodriguez, Deputy Corey was permitted to ask for the defendant's driver's license even after the reason for the stop had evaporated. Now, the state acknowledges that in Cummings 2, the issue wasn't the Illinois Constitution under the Sixty-Nine, the issue was under the Fourth Amendment, but the state submits that the facts in Cummings are so similar to this case that the rationale there should be followed by this court as well. The stop was proper. Therefore, pursuant to Cummings, the officer, the stopping officer, has the ability to ask for things like, to do a warrant check, ask for the defendant's license for safety reasons as long as it doesn't unnecessarily prolong the stop. So the state submits to those reasons. This court should reverse the trial that was filed in the local case. The stop was proper and it justified Deputy Corey's asking for the defendant's driver's license, which led to the arrest. What are the safety reasons for asking for his driver's license? Well, it was the middle of the night, Your Honor, and Deputy Corey did not know who this person was. Echoing the rationale espoused by the Supreme Court in Cummings, this is a vulnerable position for an officer. He doesn't know who he's stopped at this point. And again, it's the middle of the night. The deputy's by himself. I believe there are two people in the car in this case. So those safety justifications warrant the ability for the defendant, pursuant to Cummings, to file a transfer. Is there a difference between the U.S. Supreme Court's position on the Fourth Amendment and Article I, Section 6 of the Illinois Constitution? Well, it has been interpreted differently, as the defendant arguing in Kruger that the Illinois court gave the defendant, in that case, more protection than the Fourth Amendment of the U.S. Constitution. But the people submit that Kruger does not hold for the proposition that in every instance the Illinois Constitution does afford a defendant more protection, especially considering how closely similar this case is with Cummings, and Cummings involved. A warrant check that an officer did found in another vehicle was they had a warrant, and so the officer eventually had to stop, found that before the officer exited the vehicle that the driver was a man, and it turned out that the warrant on the vehicle was registered to a woman who had a warrant on her. Nevertheless, the officer approached, asked for the license, and resulted in proceeding in that case. And the Supreme Court said that even though the request for the license had nothing to do with the reason for the stop, it was permissible for safety reasons and as long as it didn't necessarily prolong the stop. So the people would submit that the rationale of Cummings would support the finding that the officer's behavior in this case was appropriate. Again, going back to the Illinois Constitution, as to the Fourth Amendment aspect overlapped to our Constitution, are we a limited block step or are we a lock step? Limited block step. So how would this, I mean, you don't think there'd be a difference? I don't necessarily see a difference. I don't know if defendants, again, besides Kruger, I don't necessarily see how these cases match up to the point where the result from Kruger necessarily needs to be applied in this case. Of course, that would be because you're at the state. Yeah, I'm arguing the facts as they are in the position that I'm in, but I don't necessarily, I have nothing, there's no case that necessarily says in an instance such as this, the Illinois Constitution needs to be interpreted in a different way than the U.S. Constitution to afford the general protection. Counsel has two minutes. So the state submits that the Illinois Constitution, it should be considered alongside the U.S. Constitution and by simplifying this, the court can do that. Are there any other questions? Thank you. Good morning. Thank you for your support, counsel. I'm James Wozniak. I'm counsel for Appalachian-Illinoisians in the state defender's office. News this morning of the supposedly, I guess, from the Vernon County State's Attorney's Certificate, and it tends to appeal the, I guess, there's a very extensive certificate of independence. It actually creates even more confusion to me in the, I guess, jurisdiction question. If you look on the second page of the honor, it says, therefore, the people state that they tend to appeal it. This court is assuming a statutory sum of suspension. I am not aware of a statutory sum of suspension that was filed in this case or existed in this case. I don't know why there's a reference to that order. Additionally, the state's brief in the jurisdiction statement, they say that they're appealing from an order, and no citation from the record of what specific order is being appealed from or the date of that order. And the date is important because on the notice of appeal, there are two dates listed for two orders. It says that they're appealing a court's grand independent motion to suppress statements. There was no motion in the record that I saw that was titled that. It was a defendant's motion to suppress and cause arrest, but that didn't matter. It was the exact title. In far use of the heart of the rest of my argument, there's just too little jurisdiction on it. The rule was quite clear, Rule 341, H2, in the case that you have to lay out why this court has a jurisdiction here to appeal. What rule, what law and grant jurisdiction cites the order being appealed from and the date of that order. The date of the order is not in the state's brief. There's no citations to the record. The only thing that's listed is Rule 604A. 604A does grant interlocutory appeal of the state in an order that effectively dismisses the case, hence the purpose of a certificate of impairment. I don't think it's obvious from this record. I'm not sure if you can say it's ever obvious from most records, especially at a grand independent motion to suppress before trial, that you could say that the state's case was impaired simply from the record. I definitely don't think you can say that from this case. If you watch the video, Deputy Corey finds cocaine, a gun in the vehicle. Mr. Williams' passenger was also arrested. He was supposed to have ecstasy on him. Mr. Williams was only charged with possession with intent to deliver cocaine. He was not charged with a gun charge. He was not charged with possession of any other controlled substances. So I don't know from the record whether or not there was some secondary investigation that gave rise to these charges. This is additional evidence that the state was attempting to bring in. When would the time be an important factor? The time when the events took place? Potentially, yes. The date of the charge is the date of the time that he was pulled over. It was about 11 p.m. that evening. So it's night time. Yes, yes. I guess what I would say is... It appears it's a little bit more dangerous at night. It's more dangerous at night perhaps. You just can't see as well. It's dangerous for the officer. I would say it's dangerous, I suppose, for anyone at night. You can't see as well. The thing you have to remember, too, is that the officer is pulling what he finds over for minor traffic offenses. There's no indication or allegations from the officer that had any idea that these people had a gun in the car, who was driving the vehicle, any particular safety concerns at all. What the deputy says is just for innocuous traffic violations. And I think what's important about the certificate of impairment, I would say it still hasn't been filed, because I'm not sure that this whole nice certificate of impairment, one, it's not titled that. Secondly, it's referencing an order that, as far as I can tell, wasn't filed in the trial court. It's not jurisdictional based on other cases, but in all of those cases, certificate of impairment is eventually filed. It's filed in the appellate court, or the record itself indicates, and I think one case in the prosecutor's case has done it, of what uses the rule if the state hasn't followed the rule. If no certificate of impairment has been filed, then coupled with the other jurisdictional issues in their jurisdiction statements, I think that this court should hold that they don't have jurisdiction here to dismiss the state's appeal. But the rule isn't jurisdictional. The certificate of impairment is not. Right. Yes. So it's not jurisdictional. Correct. Moving to the heart of the rest of my argument, the motion to suppress that was argued in the trial court. The facts, I would say, are not as clear-cut as the state would say they are. There's multiple layers to this. There's a video of the stop, which starts about 30 seconds before the lights are activated on Deputy Corey's vehicle, and then there's Deputy Corey's testimony. And there are stark differences between those two. In the video, Deputy Corey is seen walking up to the vehicle, and the first thing that comes out of his mouth that he says to Mr. Lyons is, oh, I see your tag on there now. I didn't see your plate. I pulled you over because I didn't see a plate, and I have your license and registration and insurance. The next thing that comes out of his mouth. Before Mr. Lyons even has a chance to answer that. He never mentions in the video that he pulled over Mr. Lyons for a registration lamp being out. He makes no mention about a diffusion of taillight. He makes no mention about air fresheners. In his testimony, he says those were other reasons that he pulled over Mr. Lyons. The state conceded at the trial court that the air fresheners and the As I state in my brief, potentially the prosecutor has a concern. I looked at the video, and the testimony is, when, how can you say that I can see through a car and see air fresheners hanging from,  on the back of the vehicle? How can you say that you can see red tape on a taillight, but again, you can't see a white piece of paper that has numbers and letters on it? Maybe he was looking at, for Illinois, the normal place you'd look to see if the car was registered, which would be the. And I would counter your honor that in Illinois, there are some, as I stated in my brief, there are things called driveway permits that are to be placed, not where a license plate, by the code and rule that are to be placed in the rear window of the vehicle and not placed where a license plate does. So, Deputy Corey should be well aware that number one, he's been calling since the 80s, kind of ordering instead of Iowa, there have been vehicles from Iowa, temporarily registered. And also that Illinois has a temporary paper registration as well. It is a fixed spot, not to be where the license plates go. I think you have to break this top down in, in multiple levels, but the state didn't concede at the trial court and the state is not conceding. Obviously in the briefs is that you're saying, well, since Mr. Williams registration link was out, he could pull over and have a traffic stop. We agree that you're required to have a license plate, thus required to have a registration. That would be a traffic violation to not have that over a vehicle. However, it's quite clear in the code is that Mr. Williams wasn't required to have a registration blank because it is required. Mr. Williams was not required to have a license plate on his vehicle. He had the temporary Iowa registration. So valid. And since he didn't have a registration, there was no reason that that was not justified. The reason for that was to stop Mr. Williams that day. The second that violation is Mr. William, or that before saying, I can't, I couldn't see the registration on Mr. Williams vehicle until I pulled over again. As a previous argument, I think that's the best way that the evidence based on that, before his testimony and the video discrepancies there. However, what the next level of the argument would be, then is under current law, how he's doing, probably goes in the U S Supreme court. They look at this, the period, the fourth amendment analysis, and Deputy Corey is to his testimonies. Do you believe that he really didn't see that registration? And then sees that as he's walking up to the back of the vehicle, it's clear on the video that he stops, he takes a look at it. And then the first thing he says, Mr. Williams, I see it now is those, the Illinois constitution, article one, section six, grant protections to Mr. Williams that at that point, when the only reason that the court had to stop, he should not be taken further. And, and, and I argue that our, Illinois constitution does go farther and further protections. Mr. Williams and the people similarly situated in, well, similar facts. And I think Kruger is a good case to look at. Not only because obviously that's where once the Supreme court locks up doctor, but also because of, in that case where they, no, not search warrant and the no, not search warrant provision was found on constitutional constitutional in that case. And then it was, well, let's look at it on the pole and say, do you have a, is the, the police officers having a reasonably relying on what they thought was constitutional law that should still be able to, uh, the evidence not be suppressed. And what the Kruger court hits on is that, that delay in time where citizens rights can be violated. Uh, this is about a whole different situation. It's about a constitutional statute. Correct. Factually. Yes. But I, I mean, the Supreme court's never come close to not getting in lockstep with factual situation. No, but I would, obviously we parse language and we, you know, it's the reading between the lines. It's the only reading that comes to the court. As in paragraph nine is explicit saying the defendant in front of the student, did not make any argument as to why we should step away from the woman lockset. And now do analysis. All right. They all want constitution. So we're essentially stuck analyzing this under a property. Yeah. They didn't go any further. We're asking that's a brief, you know, they have this brief statement about the Illinois constitution. Yes. Thank you. You know, we're just going to stay with it because, because the circumstances of the case. Right. Correct. I mean, it's just whether the defendant made a, a argument as to why part of the long section six should bring greater protections to disabilities and people. I mean, you think about it in this way is that, you know, this is an African American man, an African American pastor driving a properly registered Iowa vehicle. He doesn't buy any traffic laws. And he's pulled over. Now, obviously we all agree. I know the state would agree that you should be protected from unlawful searches and seizures. But when I think about all the constitution grants of the protections, this is that once a reason for a stop occurs, a traffic stop, take it in the comments or the facts of this case. And the reason for that stop is instantaneously dissipated upon contact, the driver or seeing the vehicle, the state should not then be allowed to get the benefit of holding the person on the side of the road to do a traffic check. And you obtain that person. But Cummings, Cummings too, would suggest they can. Under these two. Under the fourth amendment. Yes. I mean, that's sort of where we are, are at with regard to the U S constitution. I would agree with the U S constitution. Yes. So then the question becomes, which we do under the Illinois constitution, right? Yes. And if we held that it was a violation of the Illinois constitution, we would be expanding the interpretation of this limited lockstep doctrine that the Illinois Supreme Court has not expanded. Correct. Correct. Well, in these facts. Under this kind of fact scenario. Yes. Because Kruger is a very different situation with an unconstitutional statute. So usually appellate courts don't expand the Illinois, Illinois interpretation of the Illinois constitution. If the Illinois Supreme Court hasn't done that. Usually. But I mean, that's what you're requesting. Yes. And I also don't think that if this court decides. Because it would be an expansion. It would be. Yes. But I don't think it's. In reading Cummings too, I don't think it's, it's definitely not going to be a contrary opinion to how the Illinois Supreme Court has ruled on other cases for Cummings too. Because of what the Supreme Court said in Cummings too. We're not analyzing this case under the Illinois constitution. We're looking at it strictly as a Fourth Amendment United States constitution and limited lockstep. And we're not looking at it any further than that. So I think if this court would say that the Illinois constitution doesn't grant equality protections, it's not a contrary or violating end of the opinion of the Illinois Supreme Court. Are there any other questions? No. Thank you, Your Honor. Thank you. Thank you, Your Honor. All I have is one comment. I just wanted to acknowledge that I can see the lack of compliance with the Supreme Court Rule 341-4. I would argue that the jurisdiction statement wasn't sufficient regarding the dates and the orders and those types of things that the rule requires. And I apologize for that. And we'll certainly do that the next time. That being said, as I argued earlier, I would assume that the court does have jurisdiction in that the state was impaired based on the fact that the charge involved in a possession of a controlled substance which was clearly suppressed before. Are there any questions regarding that? No. The Cabalist II case, the Supreme Court said in that case it would follow a lockstep doctrine, I guess. Right. Fair. And, you know, they make a brief statement about the Illinois Constitution. What's that, in Cummings too? Yeah. You mean Cabalist II? Not Cabalist II, Cummings II. Sure. So how do you interpret that? Your Honor, I just don't see any reason to depart from it. I haven't heard of a compelling argument to expand. You said this court would have to expand the limited lockstep doctrine and be the first court to afford a defendant more protections in a case like this. The court's done that before. I would argue Cummings had the ability to do that if he wanted to. It wasn't an issue raised by the defendant. But I think the rationale is strong for why the court found the way it did in Cummings, and I don't see any reason to depart from that. I think it's based on a rational argument that these officers are vulnerable. They're on their own. They should be able to. Even if they realize they can stop after they make it, maybe it wasn't based on what they thought it was based on, but they should still be able to stop without their vehicle. In this case, two people in a vehicle. They should know that they're in the middle of the night. They should be able to ask for these types of basic inquiries. It doesn't belong to stop. For that reason, the people suspect that the Illinois Constitution should support a barrier. Should we be lockstep in this particular situation? Well, I mean, there certainly is an argument that the court, now the membership can change on our court, so that makes a difference. That we recognize that article, I mean, under the Illinois Constitution has some broader statements. Of course, this isn't a case dealing with privacy, and this isn't a case dealing with some of those other situations. This is definitely just within the purview of the factual things normally interpreted under the Fourth Amendment. But there have been statements by our court that our Constitution is separate and pardoned. We don't always have to go along with the terms of the Supreme Court. So the question is, is this the kind of case that factually calls out for that kind of change? Well, the statements in it don't. And I hate to ask the question of the question, but I haven't heard the argument on the other side of why this case is more in such a departure from the holding of comings. I haven't heard the argument why this should be treated differently. Again, as I argued earlier, I think that that decision was proper. The reason I thought the court really explained why, that it found the way it did, and I don't see why the Constitution is different. It can be more law and more protections. Why is this case dealing with that? I mean, clearly the reason for the stop, based on your opponent, certainly underscored the officer's comments. He had vanished, right? Yes. Within a minute of the stop. Within a minute of the stop, the whole reason for it just vanished. I understand. And, of course, the same thing you said in Cummings, that the reason for the stop, once the officer realized that was a man, not a woman, that reason vanished too. Counsel, you have one minute. Thank you. But the court continued to be asking for an indication, or going for the warrant check, or whatever the officer did was proper. And, again, I just haven't heard a compelling reason why this court should consider the only Constitution in this regard a different from the U.S. Constitution. I felt the state only asked that this court follow Cummings, and the U.S. Constitution in the same way. Are there any other questions? The court will take this matter under advisement, and we'll take our recess for a five-minute recess.